**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**

| | | |
|---|---|---|
| BONUTTI RESEARCH INC., and | ) | |
| JOINT ACTIVE SYSTEMS, INC. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:14-cv-00609-SEB-MJD |
| | ) | |
| LANTZ MEDICAL, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM IN OPPOSITION TO**
**DEFENDANT'S MOTION FOR STAY AND**
**TO EXTEND CASE MANAGMENT PLAN DEADLINES**

**I.      INTRODUCTION**

Defendant Lantz Medical, Inc.'s ("Lantz") motion to stay is premature and should be

denied for that reason alone.  On April 2, 2015, ten days after it filed its Motion to Stay, Lantz

filed petitions for *inter partes* review ("IPR") against four of the five Patents-In-Suit with the

Patent Trial and Appeal Board ("PTAB").  Each of those petitions is premised on alleged prior

art references that were included in the Preliminary Invalidity Contentions Lantz served over

five-months ago.  In the interim, this case has progressed substantially.  The parties have

engaged in significant fact and *Markman* discovery, and the parties just filed their Opening

*Markman* Briefs.  After waiting until the 11th hour to file its petitions, Lantz now asks the Court

to stay this case "pending final resolution" of its IPR petitions.  But the PTAB will not make a

decision on whether it will even institute review of any of the Patent-In-Suit for approximately

six months.  The majority rule under these circumstances is that a motion to stay is premature

until the PTAB makes that decision.

That being said, invalidity grounds in at least three of Lantz's petitions will likely be rejected.  Specifically, IPR petitions, by statute, must be based solely on printed publications and prior patents.  35 U.S.C. § 311(b).  Though Lantz's petitions suffer other procedural and substantive shortcomings, three of the petitions improperly rely on alleged prior sales and/or public uses under 35 U.S.C. § 102(b).  In fact, one of Lantz's petitions relies exclusively on such improper grounds.

Given the high level of uncertainty regarding whether the PTAB will even institute review of *any* of the Patents-In-Suit, and the fact that Lantz did not file a petition directed at the fifth Patent-In-Suit, Lantz's conclusory assertion that a stay will simplify the issues in this case or eliminate the need for trial is wholly speculative.  A stay would also unduly prejudice Plaintiffs as the parties are direct competitors, and Defendant would be permitted to continue selling allegedly infringing products to potential customers of Plaintiffs for up to an additional eighteen months.  Plaintiffs respectfully request that the Court deny Lantz's Motion.

## II.    STATEMENT OF RELEVANT FACTS

This case has been pending for one year, and a substantial amount of discovery and other patent litigation related tasks have already been completed.  For example:

1.    The parties exchanged initial disclosures on September 15, 2014;

2.    Plaintiffs served their Preliminary Infringement Contentions on October 17, 2014;

3.    Lantz served its Preliminary Invalidity and Non-infringement Contentions on November 21, 2014, and its Supplemental Preliminary Invalidity and Non-Infringement Contentions on December 8, 2014;

4.    Plaintiffs served their Preliminary Validity Contentions in response on December 22, 2014;

5.      Plaintiffs have served three sets of Requests for Production of Documents and sixteen Interrogatories, to which Lantz produced over 27,000 pages of documents in response. Lantz represented that it has now produced all documents responsive to Plaintiffs' requests;

6.      Lantz has served one set of Requests for Production of Documents—containing sixty-one requests—and eleven Interrogatories, to which Plaintiffs produced 3,464 pages of documents in full response;

7.      Robert Kaiser, an independent consultant to Lantz that designed the Accused Products, also produced an additional 653 pages of documents in response to a subpoena;

8.      Plaintiffs have deposed two of Lantz's primary fact witnesses, Robert Kaiser and Ted Brown;

9.      The parties have exchanged their Preliminary Identification of Claim Elements, and their Preliminary Proposed Constructions of those claim elements;

10.     The parties have exchanged *Markman* expert reports, and Plaintiffs have deposed Lantz's *Markman* expert;

11.     The parties filed their Joint Claim Construction statement on March 26, 2015; and

12.     The parties filed their Opening Claim Construction briefs on April 20, 2015.  Dkt. Nos. 77 and 78.  The Reply Claim Construction Briefs are due on May 18, 2015.

Lantz filed its Motion to Stay on March 23, 2015, representing that it would file its IPR petitions no later than March 27, 2015.  Lantz, however, did not file its petitions until April 2, 2015, just twenty days before the statutory one year deadline to file an IPR petition for three of the Patents-In-Suit.  Lantz then filed Revised Petitions on April 21, 2015.  The PTAB has now given each of the IPR petitions an official filing date of April 21, 2015.

III.   **LEGAL STANDARDS**

While courts have the inherent power to control their own docket, courts may exercise

judgment in granting stays.  *Endotach LLC v. Cook Medical Inc.*, 13-cv-01135, 2014 WL

852831, *3 (S.D. Ind. Mar. 5, 2014).  To that end, courts should "weigh competing interests and

maintain an even balance" when considering a motion to stay.  *Landis v. N. Am. Co.*, 299 U.S.

248, 254 (1936).  Stays are not mandated in cases simply because there is a co-pending

proceeding in the Patent Office:

> A court is under no obligation to delay its own proceedings on account of a PTO
> patent reexamination, regardless of their relevancy to infringement claims that the
> court must analyze. There is no per se rule that patent cases should be stayed
> pending reexaminations, because such a rule "would invite parties to unilaterally
> derail" litigation.

*Tric Tools, Inc. v. TT Techs, Inc.*, 2012 WL 5289409 at *1 (N.D. Cal. Oct 25, 2012) (citations

omitted).  *See also TPK Touch Solutions, Inc. v. Wintek Electro-Optics Corp.*, 13-cv-02218-JST,

2013 WL 6021324, *3 (N.D. Cal. Nov. 13, 2013) (stating that a stay is "never required" based on

an IPR).

To the contrary, the general rule is that requests to stay are premature until the PTAB has

decided whether it will institute review based on an IPR petition.  *See Trover Group, Inc. v.

Dedicated Micros USA*, 13-cv-01047-WCB, 2015 WL 1069179, *4 (E.D. Tex. Mar. 11, 2015)

("[T]he majority of courts that have addressed the issue have postponed ruling on stay requests

or have denied stay requests when the PTAB has not yet acted on the petition for review.  . . .  In

this district, that is not the majority rule; it is the universal practice."); *Endotach*, 2014 WL

852831, *3 (denying a motion to stay because, among other reasons, "there is no guarantee that

the USPTO will grant [the] petition for IPR, which adds to the uncertainty of how much the IPR

proceedings would simpl[ify] the issues in this case.").  This is because any potential benefits of

4

a stay are purely speculative before the PTAB grants a request for IPR.  *See Ultratec, Inc.*, 2013 WL 6044407 at *3 ("[T]he fact that the Patent Office has not yet granted the petitions . . . adds an additional layer of doubt whether the *inter partes* review will even occur let alone whether it will simplify the issues or reduce the burden of litigation for the parties or the court.").

When determining whether to stay litigation pending an IPR, courts in this district consider the following factors:  "(1) whether the litigation is at an early stage; (2) whether a stay will unduly prejudice or tactically disadvantage the non-moving party; (3) whether a stay will simplify the issues in question and streamline the trial; and (4) whether a stay will reduce the burden of litigation on the parties and the court."  *Endotach LLC*, 2014 WL 852831 at *3.  When determining whether a stay is warranted, the court "should not ignore the totality of the circumstances."  *Id.*  It is the moving party's burden to show "that the non-moving party will not be prejudiced by a stay" under the second factor.  *ADA Solutions, Inc. v. Engineered Plastics, Inc.*, 826 F. Supp. 2d 348, 350 (D. Mass. 2011).  *See also Ultratec, Inc. v. Sorenson Comm'cns, Inc.*, 13-cv-346-BBC, 2013 WL 6044407, *4 (W.D. Wis. Nov. 14, 2013).

IV.    ARGUMENT

A.    Lantz's Motion is Premature and any Alleged Simplification of the Litigation is Purely Speculative

Despite serving its invalidity contentions on November 21, 2014, Lantz delayed filing its IPR petitions until April 2, 2015, just three weeks prior to the one-year deadline.  35 U.S.C. § 315(b) ("An inter partes review may not be instituted if the petition requesting the proceeding is filed more than 1 year after the date on which the petitioner . . . is served with a complaint alleging infringement of the patent.").  Lantz subsequently filed "Revised Petitions" with the PTAB on April 21.  *See* Dkt. No. 79.  Plaintiffs' preliminary responses to the petitions are not due for three months.  37 C.F.R. § 42.107(b).  The PTAB will then have an additional three

5

months to decide whether to grant or deny each petition.  35 U.S.C. § 314(b).  In other words, there may not be a decision on whether any of the four patents will even be examined until approximately October 2015.  This fact alone is sufficient reason to deny Lantz's motion.  But Lantz's petitions themselves also suffer serious flaws.  There is thus a significant likelihood that the PTAB will not institute review.  There is simply too much speculation surrounding Lantz's petitions at this time to grant a stay.

1.  The Majority Rule Is That a Stay Is Improper Under These Circumstances

The vast majority of courts have held a motion for stay should be denied as premature where the PTAB has not yet initiated the IPR.  *See Endotach LLC*, 2014 WL 852831 at *3.  *See also Trover Group, Inc.*, 2015 WL 1069179 at *4; *SAGE Electrochromics, Inc. v. View, Inc.*, 12-cv-06441-JST, 2015 WL 66415, *4 (N.D. Cal. Jan. 5, 2015); *Unwired Planet, LLC v. Square, Inc.*, 13-cv-00579-RCJ-WGC, 2014 WL 4966033, *5 (D. Nev. Oct. 3, 2014); *Straight Path IP Group, Inc. v. Vonage Holdings Corp.*, 15-502-JLL-JAD, 2014 WL 4271633, *1 (D.N.J. Aug. 28, 2014).[1]

---

[1] *See also, e.g., Dane Techs., Inc. v. Gatekeeper Sys., Inc.*, No. 12-2730 ADM/AJB, 2013 WL 4483355, at *2 (D. Minn. Aug. 20, 2013) (noting that "[b]efore the PTO makes [its] decision the Court can only speculate as to whether the PTO will review a patent and to what extent," and the litigation could be delayed for up to six months with no perceivable benefit if the Patent Office declines to hear the case); *Derma Sciences, Inc. v. Manukamed Ltd*, No. 12-3388 (JAP), 2013 WL 6096459 (D.N.J. July 18, 2013); *Kowalski*, 2013 WL 6086029, at *2 (concluding that the request for a stay was premature because the Patent Office had not yet decided to initiate the review); *One StockDuq Holdings, LLC v. Becton, Dickinson & Co.*, No. 2:12-cv-03037-JPMtmp, at 3-4 (W.D. Tenn. May 6, 2013) (noting that the Patent Office may never grant the petition for IPR, that the result of a stay could be an unnecessary six month delay, and that in the early stage of that litigation there is little risk of overlap between the two proceedings); *TPK Touch Solutions, Inc. v. Wintek Electro-Optics Corp.*, No. 13-cv-02218-JST, 2013 WL 6021324 (N.D. Cal. Nov. 13, 2013); *Trustees of Bos. Univ. v. Everlight Elecs. Co.*, No. 1:12-cv-11935-PBS (D. Mass. July 11, 2013); *Nat'l Oilwell Varco, L.P. v. Pason Sys. USA Corp.*, No. 1:12-cv-01113-SS, 2013 WL 6097578 (W.D. Tex. June 20, 2013); *Nat'l Oilwell Varco, L.P. v. Omron Oilfield & Marine, Inc.*, No. A-12-CA-773-SS, 2013 WL 6097571 (W.D. Tex. June 10, 2013); *Warsaw Orthopedic, Inc. v. Nuvasive, Inc.*, No. 3:12-cv-02738-CAB-MDD (S.D. Cal. May 30, 2013);

In a factually similar case, the Eastern District of Texas denied a motion to stay pending an IPR petition that had not yet instituted. *See Trover Group, Inc.*, 2015 WL 1069179 at \*4. In that case the court observed that: (1) defendants "delayed for months [after serving their invalidity contentions] before filing their petition for inter partes review with the PTAB" just five days short of the one-year deadline, (2) the parties had engaged in substantial discovery; and (3) the parties had fully briefed claim construction. *Id.* at \*1-3. The court, citing over forty cases that denied a motion to stay as premature or postponed ruling on the motion until after the PTAB had ruled on an IPR petition, recognized denying a motion to stay under these circumstances was the "majority rule." *Id.* at \*5-6. Accordingly, the court denied the motion and further stated that "this Court regards the most important factor in determining whether to stay litigation pending inter partes review to be *whether the PTAB has acted on the defendants' petition for review*." *Id.* at \*4 (emphasis added).

Given this majority rule, it is telling that Lantz does not cite a single IPR case in support of its motion. Instead, Lantz relies only on cases involving reexaminations under pre-AIA rules or Covered Business Method Reviews.[2] And in seventeen of the twenty cases cited by Lantz, the

---

*Automatic Mfg. Sys., Inc. v. Primera Tech., Inc.*, No. 6:12-cv-1727-Orl-37DAB, 2013 WL 1969247 (M.D. Fla. May 13, 2013); *Frontline Techs., Inc. v. CRS, Inc.*, No. 2:07-cv-02457-ER (E.D. Pa. Oct. 26, 2012).

[2] *See Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983) (reexamination had already been granted before the court stayed the case); *Nanometrics, Inc. v. Nova Measuring Instruments, Ltd.*, 06-cv-2252-SBA, 2007 WL 627920, \*3 (N.D. Cal. Feb. 26, 2007) (same); *Yodlee, Inc. v. Ablaise Ltd*, 06-cv-07222-SBA, 2009 WL 112857 (N.D. Cal. Jan. 16, 2009) (same); *AT&T Intellectual Property I v. TiVo, Inc.*, 774 F. Supp. 2d 1049, 1053 (N.D. Cal. 2011) (same); *EchoStar Tech. Corp. v. TiVo, Inc.*, 05-cv-00081-DF, 2006 WL 2501494 (E.D. Tex. Jul. 14, 2006) (same); *Cook, Inc. v. Endologix, Inc.*, 09-cv-01248-WTL-TAB, 2010 WL 325960, \*1 (S.D. Ind. Jan. 21, 2010) (stating that "the Court finds it significant that the PTO has already acted upon and granted both of Endologix's requests for reexamination."); *Microsoft Corp. v. Tivo Inc.*, 10-cv-00240-LHK, 2011 WL 1748428, \*6 (N.D. Cal. May 6, 2011) (the PTO granted Tivo's request for reexamination on six of the seven patents-in-suit before the court granted its motion to stay, and Tivo's reexamination requests were filed only nine months after Microsoft's

Patent Office had already instituted reexamination of the challenged patents.  These cases thus

offer no support to Lantz's Motion to Stay and, indeed, undercut the Motion.

2.     The PTAB is Likely to Reject Many, if Not All, of the Purported
<u>Invalidity Grounds in Lantz's IPR Petitions</u>

It is very possible that the PTAB will reject several, if not all, of the invalidity grounds

advanced in Lantz's IPR petitions.  The statute establishing the scope of an IPR clearly states

that petitions may only be premised on prior printed publications and patents:

> A petitioner in an inter partes review may request to cancel as unpatentable 1 or
> more claims of a patent only on a ground that could be raised under section 102 or
> 103 and *only on the basis of prior art consisting of patents or printed
> publications*.

35 U.S.C. § 311(b) (emphasis added).  But Lantz's IPR petitions for U.S. Patent Nos. 8,784,343;

7,955,286; and 7,404,804 rely on the alleged prior sale/use of a purported TenoStretch device or

JACE H440 device.  Exhs. 1; 2; and 3.  In fact, Lantz's IPR petition for the '343 patent relies

*solely on the purported TenoStretch device*.  Lantz's '343 petition, and any other ground relying

on this type of alleged non-printed publication or patent prior art, is improper pursuant to

§311(b).  While it is impossible to know for certain whether or not Lantz's IPR petitions will be

instituted, there is a strong possibility that many (if not all) of the asserted grounds in the

petitions will be denied.

---

allegations of infringement, and only very limited discovery had occurred); *Speedtrack, Inc. v.
Wal-Mart.com USA, LLC*, 06-cv-07336-PJH, 2009 WL 281932, *1-2 (N.D. Cal. Feb. 5, 2009)
(the PTO had ordered reexamination and "identified four substantial new questions of
patentability in light of four prior art references" which were identical to the prior art raised in
the litigation); *KLA-Tencor Corp. v. Nanometrics, Inc.,* 05-cv-03116-JSW, 2006 WL 708661, *3
(N.D. Cal. Mar. 16, 2006) (only one set of requests for production had been recently served and
the PTO had already granted defendant's request for reexamination on two of the three patents-
in-suit); *Ricoh Co., Ltd v. Aeroflex Inc.*, C03-cv-04669-MJJ, 2006 WL 3708069, *1, fn.3 (N.D.
Cal. Dec. 14, 2006) (the court stayed the case only after the PTO issued a non-final office action
in a pending reexamination rejecting all of the claims of the patent-in-suit and had denied an
earlier motion to stay when the reexamination was still pending).

3.    A Stay Will Not Reduce the Burden of Litigation on the Parties or Court

A stay at this time would do little, if anything, to reduce the burden of litigation.  As stated above, it is pure speculation whether the PTAB will even institute review on any of Lantz's IPR petitions.  Further, Lantz did not challenge the '979 patent, so any review of the other Patents-In-Suit will not narrow the dispute over the '979 patent.  *Davol, Inc. v. Atrium Med. Corp.*, 12-cv-958-GMS, 2013 WL 3013343, *6 (D. Del. Jun. 17, 2013) ("Moreover, the court is concerned by Atrium's failure to seek *inter partes* review of the '420 Patent – a stay of this action in its entirety will do little to advance the parties' dispute over the '420 patent."). And, as also discussed above, Lantz failed to include a single statutorily permitted ground in its IPR petition against the '343 patent.  The disputes regarding that patent thus will not likely be narrowed, either.

Because no IPR has been instituted, Lantz bases its simplification argument on "recent statistics" that allegedly show that the PTAB will "*likely* institute a review on *at least some* of the litigated claims."  Dkt. No. 69 at 2 (emphasis added).  The actual statistics, which Lantz does not provide, show that before an IPR is instituted there is a very high likelihood that the challenged claims will survive an IPR and return to litigation—as of January 15, 2015, only 24% of all claims challenged in an IPR were actually found unpatentable by the PTAB.[3]  Regardless, "the overall statistics for the number of petitions that are reviewed and the number of claims that are invalidated are not especially enlightening as to the likely disposition of any particular patents or claims, since the likelihood of invalidation depends entirely on the particulars of the patents and claims in dispute."  *Trover Group, Inc.* 2015 WL 1069179 at *4.

---

[3] The statistics relating to IPRs can be found at the following link from the United States Patent Office's website: http://www.uspto.gov/sites/default/files/documents/inter_partes_review_petitions_terminated_to _date%2001%2015%202015.pdf.

Thus, even if IPR is instituted on any of the remaining petitions, no IPR was filed against the '979 patent and so this case will continue regardless of the outcome of the IPR petitions. And, in the event that any of the claims survive a potential IPR, once the parties return to this Court, the IPR estoppel will not prevent Lantz from raising invalidity arguments under 35 U.S.C. § 112 and under 35 U.S.C. §§ 102 and 103 based on prior use/sale. *See Davol, Inc.*, 2013 WL 3013343 at *6 ("As Davol points out, 'there are numerous issues to be tried regarding the [patents-in-suit] that *cannot* be addressed by Atrium's . . . petitions, including infringement, damages, validity under 35 U.S.C. § 112, and . . . equitable defenses.").

The Court and the Parties thus will not experience any additional burden if the motion to stay is denied at this time. Any additional discovery taken will be relevant to the issues that will remain in this Court, as well as those that will likely return *if* an IPR is actually initiated regarding the other Patents-In-Suit.

## B.      This Case is Not in its Early Stages

Contrary to Lantz's conclusory assertions, this case is not in its early stages. Discovery is well underway. The parties have engaged in significant written discovery directed to infringement, invalidity, and willfulness. The parties have produced and reviewed tens of thousands of pages of documents. Plaintiffs have taken the depositions of three of Lantz's key witnesses, including Lantz's CEO, design engineer, and claim construction expert. The parties have also exchanged infringement and invalidity positions, claim construction positions, expert *Markman* reports, and filed their opening claim construction briefs. It thus cannot be convincingly stated that this case is in its early stages and that it should therefore be stayed. *See Rensselaer Polytechnic Institute v. Apple Inc.*, 13-cv-0633-DEP, 2014 WL 201965, *9

(N.D.N.Y. Jan. 15, 2014) (finding this factor neutral and denying a stay where "the parties are winding their way through fact discovery and the claim construction process").[4]

Lantz cites several cases to support its position that stays have been granted when litigation is further along than in this case.  Dkt. No. 69 at 5.  But the vast majority of those cases all involve fact patterns where the PTO had *already granted a reexamination of the patent-in-suit*.  *See* fn. 2*, supra*.  Here, a decision on whether the PTAB will even review any of the Patents-In-Suit likely will not be reached until October 2015.

## C.    Plaintiffs Would be Unduly Prejudiced by a Stay

Plaintiff Joint Active Systems, Inc. ("JAS") and Lantz are direct competitors in the ROM orthosis market.  A stay that could last up to eighteen months at this late stage of litigation would be highly prejudicial to JAS.  Lantz's ongoing infringement is causing JAS significant monetary and irreparable harm.  The mere length of a potential IPR is prejudicial as it could cause JAS to lose market share and good will as well as cause price erosion.  *See Ultratec, Inc.*, 2013 WL 6044407 at *4 ("[T]he length of time of *inter* parties (sic) review is prejudicial to plaintiffs."). *See also Davol, Inc.*, 2013 WL 3013343 at *2-3 (finding the undue prejudice factor weighs against granting a stay where the "prospect of lost market share and price erosion inject an added measure of uncertainty into this action.").  This is particularly true where, as here, an IPR has not

---

[4] Lantz could have filed its motion to stay and IPR petitions earlier in this litigation, and certainly after it filed its invalidity contentions on November 21, 2014.  Instead, Lantz waited until the very end of its statutory one year deadline to file its IPR petitions and this motion, letting this case progress into the claim construction stage.  This also weighs against granting the stay request.  *See Freeney v. Apple Inc.*, 13-cv-00361-WCB, 2014 WL 3611948, *2 (E.D. Tex. Jul. 22, 2014) ("Netgear waited for a year after the complaint was filed before filing its petition for inter partes review.  Even after the defendants filed their invalidity contentions in this case, relying on many of the same prior art references that Netgear asserted in its petition, Netgear still delayed for an additional six months before filing the petition. . . .  The pattern of delay on Netgear's part cuts against granting a stay.").

been filed against the '979 patent, and where the IPR filed against the '343 patent is based on improper grounds. These two patents cover all of the Accused Products.[5]

Lantz asserts that Plaintiffs will not be prejudiced because Lantz is not seeking a stay for any tactical advantage. Dkt. No. 69 at 9-10. The circumstances surrounding the filing of Lantz's Motion to Stay belie this argument. Lantz filed its motion the day before a scheduled status conference with Judge Dinsmore. Included in that Motion was a request that the Court order *all discovery be halted* and *all Markman deadlines be delayed* until the Court rules on the Motion to Stay. (Judge Dinsmore did not act upon that request). The parties' Joint Claim Construction Statement was due three days after Lantz filed its Motion to Stay and, at that time, the Opening *Markman* Briefs were due twenty-one days later. Dkt. No. 69 at 10. Plaintiffs were also scheduled to depose two of Lantz's key witnesses on April 6 and 7: (1) Ted Brown, Lantz's founder and CEO who also had apparent knowledge regarding the alleged TenoStretch device relied upon by Lantz in its Invalidity Contentions and its IPR petitions; and (2) Robert Kaiser, who designed the accused Stat-A-Dyne products and allegedly developed and offered the TenoStretch device for sale. Plaintiffs sought to take these depositions earlier, but were informed by Lantz's counsel that the witnesses and/or counsel were not available for essentially the entire month of March.[6] Exh. 4. And, lastly, the motion to stay was filed *before any IPR petitions were filed*. Thus, while Lantz alleges it was not seeking any tactical advantages, it certainly was asking the Court for them.

---

[5] The '343 patent covers all of Lantz's Stat-A-Dyne products, and the '979 Patent covers the ESP (Elbow, Supination Pronation) and PRO/SUP (Pronation / Supination) products.

[6] Plaintiffs first sought to depose Mr. Kaiser in December, but then on-going discovery disputes forced that deposition to be delayed. Exh. 4.

Lantz also argues in its motion that Plaintiffs will not be prejudiced because Plaintiffs allegedly waited four years to file this lawsuit against Lantz.  Dkt. No. 69 at 9.  This is misleading.  In 2010, Lantz began selling the initial version of its Stat-A-Dyne WHFO product. Lantz did not release the accused Stat-A-Dyne PRO/SUP and ELBOW products until 2011, did not release its ESP product until 2012, and did not began selling its KNEE product until the beginning of 2014.  Two of the patents-in-suit also issued after 2010; the '343 patent did not issue until July 22, 2014, and the '286 patent did not issue until June 7, 2011.  Plaintiffs also spent considerable time conducting pre-suit investigations into Lantz's products to determine the extent of infringement.  It follows that Plaintiffs did not delay four years before filing this lawsuit.

Lantz has failed to carry its burden to show that Plaintiffs would not be prejudiced by a stay.  This factor thus weighs in favor of denying the stay.

## V.   CONCLUSION

Each of the factors and the totality of the circumstances weigh against staying this case. Lantz's motion is premature as no IPR proceedings have been instituted.  Lantz fails to provide any evidence that a stay would simplify this case, offering instead speculation.  A stay would also unduly prejudice JAS as JAS and Lantz are competitors in a niche market.  Lantz, as the movant, fails to raise any facts that overcome this showing of prejudice.  Given the late stage of this litigation, no stay is warranted at this time.  Plaintiffs respectfully request the Court to deny Lantz's motion in its entirety and award such other and further relief as this Court deems just and proper.

Respectfully submitted,

SENNIGER POWERS LLP

By: _/s/ Robert M. Evans, Jr._
    Robert M. Evans, Jr. (*pro hac vice*)
    Michael J. Hartley (*pro hac vice*)
    Elizabeth E. Fabick (*pro hac vice*)
    SENNIGER POWERS LLP
    100 North Broadway, 17th Floor
    Saint Louis, MO 63102
    (314) 345-7000 (telephone)
    (314) 345-7600 (facsimile)
    revans@senniger.com
    mhartley@senniger.com
    efabick@senniger.com

    Steven D. Groth
    BOSE McKINNEY & EVANS LLP
    111 Monument Circle, Suite 2700
    Indianapolis, IN 46204
    (317) 684-5000 (telephone)
    (317) 684-5173 (facsimile)
    sgroth@boselaw.com

    *Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a copy of the foregoing has been served upon the

following counsel of record via the Court's electronic filing service this 23rd day of April, 2015:

> J. Blake Hike
> Jacque R. Wilson
> Jon A. Bragalone
> CARSON BOXBERGER LLP
> 301 W. Jefferson Blvd., Suite 200
> Fort Wayne, IN  46802
> Wilson@carsonboxberger.com
> bragalone@carsonboxberger.com
> hike@carsonboxberger.com

*/s/ Robert M. Evans, Jr.*
