UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BONUTTI RESEARCH, INC., <br> JOINT ACTIVE SYSTEMS, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> LANTZ MEDICAL, INC., <br><br> Defendant. <br> _____ <br><br> LANTZ MEDICAL, INC., <br> LANTZ MEDICAL, INC., <br><br> Counter Claimants, <br><br> vs. <br><br> BONUTTI RESEARCH, INC., <br> JOINT ACTIVE SYSTEMS, INC., <br> BONUTTI RESEARCH, INC., <br> JOINT ACTIVE SYSTEMS, INC., <br><br> Counter Defendants. | No. 1:14-cv-00609-SEB-MJD |

**ORDER ON DEFENDANT'S MOTION TO STAY**

This matter comes before the Court on Defendant's Motion to Stay. [Dkt. 69.] For the reasons set forth below, the Court **DENIES** Defendant's Motion.

**I.      Background**

On April 18, 2014, Bonutti Research, Inc. and Joint Active Systems, Inc. ("Plaintiffs") sued Lantz Medical, Inc. ("Defendant"), alleging that Defendant had infringed U.S. Patents Nos.

1

5,848,979 ("the '979 patent"), 7,955,286 ("the '286 patent"), 7,404,804 ("the '804 patent"), and 7,112,179 ("the '179 patent"). [Dkt. 1.] On July 22, 2014, Plaintiffs amended their complaint to add an allegation that Defendant had also infringed U.S. Patent No. 8,784,343 ("the '343 patent"). [Dkt. 34.]

The Court entered a Case Management Plan ("CMP") on June 23, 2014, [Dkt. 28], which plan was later amended to extend various deadlines on August 15, 2014, [Dkt. 43], and on December 12, 2014. [Dkt. 62.] Discovery commenced, [*see, e.g.*, Dkt. 33], but on March 23, 2015, Defendant filed the currently pending motion to stay this matter pending the resolution of certain proceedings before the U.S. Patent and Trademark Office ("PTO"). [Dkt. 69.] Defendant stated that it planned to petition the PTO to initiate *inter partes* review ("IPR") of the '286, '804, '179, and '343 patents, and Defendant asked the Court to stay this litigation until the PTO had concluded any such review. [*Id.*] Plaintiff opposed Defendant's motion, [Dkt. 82], and the matter was fully briefed on May 11, 2015. [*See* Dkt. 88.]

## II.     Discussion

Courts have inherent authority and broad discretion to manage their dockets and stay proceedings. *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426 (Fed. Cir. 1988). This includes the power to stay a case pending resolution of related proceedings before the PTO. *See id.* The Court's discretion, however, is not unfettered. *Endotach LLC v. Cook Med. Inc.*, No. 1:13-CV-01135-LJM, 2014 WL 852831, at *3 (S.D. Ind. Mar. 5, 2014). Thus, in considering whether to stay litigation pending resolution of an IPR, district courts should consider the following factors:

> (1) whether the litigation is at an early stage; (2) whether a stay will unduly prejudice or tactically disadvantage the non-moving party; (3) whether a stay will simplify the issues in question and streamline the trial; and (4) whether a stay will reduce the burden of litigation on the parties and the court.

*Id.* (quoting *Ultratec, Inc. v. Sorenson Comm'ns*, Inc., No. 13–cv–346–bbc, 2013 WL 6044407, at *2 (W.D.Wis. Nov.14, 2013)). These factors indicate that a stay in this case is not warranted.

**A. Stage of the Litigation**

A court is more likely to grant a stay when the case at hand is at an early stage in the litigation. *See, e.g.*, *Ho Keung Tse v. Apple Inc.*, No. C 06-06573 SBA, 2007 WL 2904279, at *2 (N.D. Cal. Oct. 4, 2007) ("A stay is particularly appropriate for cases in the initial stages of litigation or in which there has been little discovery."). Thus, Defendant in this case argues that little discovery has been conducted and that the parties have not taken substantial steps towards resolution of their claim construction disputes. [*See, e.g.*, Dkt. 69 at 4-5 ("The parties have exchanged only written discovery requests and responses. No damages-related discovery has been conducted. No depositions have been taken. JAS noticed two depositions only ten days ago. And the parties have not prepared a Joint Claim Construction Statement or filed *Markman* briefs. Further, the Court has not yet set a date for the *Markman* hearing, nor has it set dates for the close of fact discovery or trial."); *see also* Dkt. 84 at 1 ("Damages discovery will not take place until after the *Markman* hearing, which has not been set.").

Subsequent events have passed Defendant by. The parties have now submitted their *Markman* briefs, [Dkts. 77 & 78], and the Court has now scheduled the *Markman* hearing. [Dkt. 89.] In addition, the parties have moved beyond written discovery and have conducted several depositions. [*See* Dkt. 82 at 3 ("Plaintiffs have deposed two of Lantz's primary fact witnesses[.]); *id.* ("Plaintiffs have deposed Lantz's *Markman*

3

expert[.]").] Thus, even if the case was at a relatively early stage when Defendant filed its motion, the case has now moved far beyond that point.

Further, Defendant draws on this Court's decision to grant a stay in *Cook Inc. v. Endologix, Inc.*, No. 1:09-CV-01248-WTLTAB, 2010 WL 325960 (S.D. Ind. Jan. 21, 2010). [*See* Dkt. 69 at 4 ("Each of the three factors set forth in *Cook* . . . favor granting Lantz's Motion For Stay.").] There, however, the Court had "not approved a Case Management Plan" and the parties had "not initiated discovery." 2010 WL 325960 at *2. The Court also found it significant that the defendant had requested a stay within two months of the filing of the complaint, such that the defendant had "submitted its request for a stay promptly at the outset of the litigation." *Id.* at *3.

Here, in contrast, the Court has already approved and then adjusted the parties' CMP, [Dkts. 28, 43 & 62], and, as noted above, the parties have already commenced discovery. Moreover, Defendant in this case waited almost eleven months from the filing of Plaintiffs' complaint before seeking a stay. [*See* Dkt. 1 (April 28, 2014 Complaint); Dkt. 69 (March 23, 2015 Motion to Stay).] The facts of *Cook* thus have little relevance to Plaintiff's current motion, and the Court concludes that the stage of the litigation in this case does not favor a stay.

### B. Prejudice or Tactical Disadvantage

Defendant asserts that the stay will not prejudice or disadvantage Plaintiff. [Dkt. 69 at 9.] With respect to prejudice, Defendant claims that any harm resulting from delay of these proceedings will be "more than off-set by increased certainty of whether [the] patent[s] will survive [the IPR] and whether there will be any need for litigation." [*Id.* (quoting *Nanometrics, Inc. v. Nova Measuring Instruments, Ltd.*, No. C 06-2252SBA, 2007 WL 627920, at *3 (N.D.

Cal. Feb. 26, 2007)).] As described below, however, Defendant's petition for IPR may not even be granted, and so there is little "certainty" that the (proposed) IPR will have any effect at all on this litigation.

With respect to tactical disadvantage, Defendant claims that it "is not, for example, seeking a stay on the eve of trial or after protracted discovery" insofar as "the parties have not prepared a Joint Claim Construction Statement or filed *Markman* briefs," "[n]o *Markman* hearing has been scheduled," and "[n]o depositions have been conducted." [*Id.* at 9-10 (citation and quotation marks omitted). Once again, however, subsequent events have diminished the force of Defendant's argument: the parties have now filed their Joint Claim Construction Statement, [Dkt. 71], the parties have now filed their *Markman* briefs, [Dkts. 77 & 78], the Court has now scheduled a *Markman* hearing, [Dkt. 89], and the parties have now deposed several witnesses. [*See* Dkt. 82 at 3.] Any disadvantage resulting from delay is thus much greater than at the time Defendant initially sought a stay.

In reply, Defendant nonetheless contends that this factor favors a stay because the Court should consider **Plaintiffs'** alleged delay in filing this lawsuit. [Dkt. 84 at 6.] Defendant charges that Plaintiffs "*consciously* chose to delay filing suit against Lantz Medical," such that any further delay must not be especially harmful to Plaintiffs. [*Id.* (emphasis original); *see also* Dkt. 69 ("[A] stay will cause no undue prejudice to [Plaintiffs], given [their] nearly four year delay in filing suit[.]").]

As Plaintiffs explain, however, Defendant did not begin selling certain of the allegedly infringing products in this case until 2012 or 2014, [Dkt. 82 at 13], such that Plaintiff obviously did not delay "four years" in filing suit with regard to these products. In addition, Plaintiffs explain that they "spent considerable time conducting pre-suit investigations into Lantz's

5

products." [*Id.*] The Court can hardly fault Plaintiffs for doing so: despite these pre-suit investigations, Defendant continues to assert that Plaintiffs' claims are "either brought in subjective bad faith or are objectively baseless," [*see* Dkt. 59 ¶ 11], such that Defendant will seek to hold Plaintiffs accountable for Defendant's attorneys' fees. [*See id.* at 4; *see also Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1757 (2014) ("[A] case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award.").] Any delay on Plaintiffs' part was thus largely a prudent attempt to ensure their lawsuit would not expose them to liability for Defendant's attorneys' fees, and the Court will not penalize Plaintiffs for opposing **additional** delay **after** they determined that a lawsuit was warranted. This factor thus does not favor a stay.

**C. Simplification of Issues**

Defendant claims that a stay "will likely simplify issues for trial" by narrowing or eliminating the contested issues in this case. [Dkt. 69 at 6.] It notes that the IPR may result in cancellation or alteration of numerous claims involved in this suit, such that the Court should not waste its resources interpreting claim language that ultimately may not be relevant to the lawsuit. [*Id.* at 6-7.]

Defendant's argument is entirely speculative. Although Defendant represented to the Court that it would file its IPR petitions "on or before March 27, 2015," [Dkt. 69 at 1], Defendant did not actually file final petitions until April 21, 2015. [*See* Dkt. 82 at 3.] As the owner of the relevant patents, Plaintiffs now have three months to respond to Defendant's petition. 35 U.S.C. § 313; 37 C.F.R. § 42.107(b). After any response is submitted, the PTO will have three months to determine whether to grant the petition. 35 U.S.C. § 314(a).

The Court is thus faced with the prospect of waiting six months—until October 21, 2015—before the Court will even know whether the PTO will grant Defendant's petition, let alone whether the end result of that petition—up to one year later, *see* 35 U.S.C. § 316(a)(11)—will affect any of the claims at issue. Given the significant delay between the request for IPR and the PTO's ultimate decision on whether to initiate the IPR, it is hardly surprising that "the majority of courts that have addressed the issue have postponed ruling on stay requests or have denied stay requests when the [PTO] has not yet acted on the petition for review." *Trover Grp., Inc. v. Dedicated Micros USA*, No. 2:13-CV-1047-WCB, 2015 WL 1069179, at *5 (E.D. Tex. Mar. 11, 2015). And indeed, this Court has previously followed the majority rule in denying as premature a motion to stay that was filed before the PTO acted on the request for IPR. *Endotach*, 2014 WL 852831, at *5 ("[T]here is no guarantee that the USPTO will grant Medtronic's petition for IPR, which adds to the uncertainty of how much the IPR proceedings would [simplify] the issues in this case.").

Further, Defendant again relies on *Cook*, [Dkt. 69 at 7], but *Cook* is again distinguishable: There, this Court did impose a stay, but the Court expressly "[found] it significant that the PTO **ha[d] already acted upon and granted both of Endologix's requests for reexamination**." *Cook*, 2010 WL 325960, at *1 (emphasis added). Here, in contrast, the PTO has not yet acted, and the Court thus cannot say whether the request for IPR actually will simplify any issues before the Court.

Next, even if the PTO does grant the IPR, such a grant may not yield significant benefits. The PTO during IPR proceedings construes patent claims according to their "broadest reasonable interpretation." *In re Cuozzo Speed Technologies*, LLC, 778 F.3d

7

1271, 1281 (Fed. Cir. 2015). District courts, however, construe claims under a different standard. *See id.* at 1288 (Newman, J., dissenting) ("[I]t is not disputed that the 'broadest reasonable interpretation' of claims and technology can differ from the ultimately correct decision on the standards of *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc)."). Thus, even if the PTO grants review and construes certain claims at issue in this case, this Court must still conduct its own construction of those claims. *See id.* ("The panel majority thus precludes achieving review of patent validity in *Inter Partes* Review comparable to that of the district courts, where validity is determined based on the correct claim construction, not an artificially 'broadest' construction."); *see also Pragmatus AV, LLC v. Yahoo! Inc.*, No. C-13-1176 EMC, 2014 WL 1922081, at *4 (N.D. Cal. May 13, 2014) ("[T]his Court owes no deference to the [PTO's] claim construction done as part of an *inter partes* review.").

In addition, anticipation analysis in an IPR proceeding is limited: the petitioner in such a proceeding may only seek to cancel a claim "on a ground that could be raised under section 102 [novelty] or 103 [obviousness] and only on the basis of prior art consisting of patents or printed publications." 35 U.S.C. § 311. Thus, even if the claim at issue survives the IPR proceeding, a defendant may still raise other invalidity grounds before a district court. *See, e.g.*, 35 U.S.C. § 102 (defining prior art to include public use and prior sales, in addition to patents and printed publications); *id.* § 112 (setting out additional requirements for validity); *accord, e.g.*, *Endotach*, 2014 WL 852831, at *5 ("[Defendant] is relying on 35 U.S.C. § 112 invalidity claims that cannot be addressed in an IPR[.]"). As a result, even if Defendant's petition in this case is granted, the parties may ultimately still be required to litigate anticipation or other validity issues before this

Court. Staying this litigation could impede the sort of discovery necessary to fully litigate such issues, and the Court accordingly sees little reason to impose such a stay.

**D. Burden of Litigation**

Defendant contends that granting the stay would ease the burden on this Court by potentially resolving certain of Plaintiffs' claims without the necessity of trial. [Dkt. 69 at 2.] As described above, however, any such benefit is entirely speculative until the PTO acts on Defendant's petition, such that this factor does not strongly favor a stay.

Moreover, Defendant's argument overlooks the fact that its petition includes only four of the five patents at issue in this suit. [*See id.* at 2 (omitting '979 patent from IPR petitions).] Thus, regardless of whether the PTO grants Defendant's petition, and regardless of whether the PTO cancels any portions of the patents subject to the IPR, this case must still proceed in order to resolve Plaintiffs' claims with respect to the '979 patent. The parties will thus still need to prepare themselves for summary judgment and trial, such that staying this litigation would simply delay work that—regardless of Defendant's IPR petition—must still be done.

Numerous courts—including this one—have found that a stay is not warranted in such circumstances. *See, e.g.*, *Endotach*, 2014 WL 852831, at *4 ("[T]he pending IPR is focused on the '417 patent, [but] there [is] another patent at issue, . . . which has no connection to the claims of the '417 patent[.]"); *Dane Technologies, Inc. v. Gatekeeper Sys., Inc.*, No. CIV. 12-2730 ADM/AJB, 2013 WL 4483355, at *2 (D. Minn. Aug. 20, 2013) ("Gatekeeper has only petitioned for review of two of the three patents in this case. Even if the PTO decided to review the '836 Patent and the '979 Patent, Dane would still be left with its infringement claim for the '379 Patent languishing and unresolved."). Conceivably, the Court could stay this litigation only with respect to the patents involved in Defendant's petition, but "allowing litigation to proceed solely

9

with respect to [one] patent while the parties await a PTO decision on the other [four] patents-in-suit would invite substantial inefficiency." *Davol, Inc. v. Atrium Med. Corp.*, No. CIV.A. 12-958-GMS, 2013 WL 3013343, at *6 (D. Del. June 17, 2013). Granting the stay would therefore not free the Court or the parties from the burden of litigation, and this factor thus favors denial of Defendant's motion.

**E. Summary**

Based on the foregoing, each of the above factors indicates that a stay is not warranted. Further, by the time the PTO decides whether to grant Defendant's IPR petition, this case will have further proceeded and the Court will have already conducted the parties' *Markman* hearing. Additionally, even if the petition is granted and even if Defendant is entirely successful in the ensuing IPR, this case must still proceed to summary judgment and/or trial with respect to the '979 patent. In these circumstances, a stay is inappropriate at this time, and a stay will remain inappropriate even at a later time. The Court thus **DENIES** Defendant's Motion to Stay, and does so with prejudice to the motion's resubmission after the PTO rules on Defendant's petition for *inter partes* review.

### III. Conclusion

For the reasons discussed above, the Court **Denies** Defendant's Motion to Stay. [Dkt. 69.] This case shall proceed as set forth in the Court's prior scheduling orders. [*See* Dkts. 28, 43 & 62.]

Date: 05/26/2015

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Steven D. Groth
BOSE MCKINNEY & EVANS, LLP
sgroth@boselaw.com

Jacque Raynard Wilson
CARSON BOXBERGER, LLP
wilson@carsonboxberger.com

James Blake Hike
CARSON BOXBERGER, LLP
hike@carsonboxberger.com

Jon A. Bragalone
CARSON BOXBERGER, LLP
bragalone@carsonboxberger.com

Elizabeth E. Fabick
SENNIGER POWERS LLP
efabick@senniger.com

Michael J. Hartley
SENNIGER POWERS LLP
mhartley@senniger.com

Robert M. Evans, Jr
SENNIGER POWERS LLP
revans@senniger.com